IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| <u>In re</u> 25350 Pleasant Valley LLC | ) | |
| | ) | |
| Debtor. | ) | |
| ——————————————— | ) | · |
| | ) | |
| Elshan Bayramov, | ) | |
| | ) | |
| Appellant, | ) | 1:24-cv-1373 (LMB/WBP) |
| | ) | |
| v. | ) | 1:23-bk-11983 (KHK) |
| | ) | |
| 25350 Pleasant Valley LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MainStreet Bank | ) | |
| | ) | |
| Appellees. | ) | |

<u>MEMORANDUM OPINION</u>

     Elshan Bayramov ("appellant" or "Bayramov"), acting <u>pro se</u>, has appealed two orders of the bankruptcy court—one denying his motion for reconversion of the bankruptcy proceeding from a Chapter 7 to a Chapter 11 proceeding [Bankr. Dkt. 170], [1] and the other denying his motion for preliminary injunction [Bankr. Dkt. 171].  Finding no error, the bankruptcy court's orders will be AFFIRMED.

## I. BACKGROUND

     25350 Pleasant Valley LLC ("debtor") was a Virginia limited liability company owned 50% by Bayramov and 50% by Babek Bayramov.  It operated as a real estate holding company and derived income from renting two commercial condominiums, Units 175 and 180, 25350

---

[1] Bayramov designated every entry that was in the bankruptcy court's docket to be part of the record for this appeal.  <u>See</u> [Dkt. 2] at 35.

Pleasant Valley Drive, Chantilly, Virginia, to motor vehicle-related businesses.  Before the

debtor declared bankruptcy, the condominiums had been rented to AutoLine of VA Inc, a

Virginia-incorporated used car dealership that Bayramov operated, and for which he served as

the Director and registered agent.  See [Bankr. Dkt. 206-3] at 5 (No. 1:23-bk-11983); Va. State

Corp. Comm'n Clerk's Info. Sys., Entity Info., AutoLine OF VA INC,

https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=30754 (last accessed

Oct. 18, 2024).

On December 6, 2023, the debtor filed for Chapter 11 protection in the U.S. Bankruptcy

Court for the Eastern District of Virginia.  [Bankr. Dkt. 1].  In its amended voluntary petition, the

debtor estimated that it had between $1,000,001 to $10,000,000 in assets, and between

$10,000,001 and $50,000,000 in debt.  [Bankr. Dkt. 13].  On December 8, 2023, the bankruptcy

court designated Bayramov, the debtor's manager, to perform the duties imposed upon the debtor

by the Bankruptcy Code.  [Bankr. Dkt. 12].  The next day, the bankruptcy court informed the

debtor that its schedules, statement of financial affairs, and summary of assets and liabilities

were due by December 20, 2023, [Bankr. Dkt. 15], and its Chapter 11 plan of reorganization was

due by March 5, 2024, [Bankr. Dkt. 16].

On December 19, 2023, the debtor filed its schedules of assets and liabilities.  [Bankr.

Dkt. 25].  It valued its assets at $3.96 million, stating that the two commercial condominiums

were worth $3.4 million, it expected to be paid $540,000 by customers, and it had about $22,000

in cash.  Id. at 7.

The debtor identified two priority secured creditors to which it owed a total of about $4.2

million: Northwest Federal Credit Union ("NWFCU") and MainStreet Bank.  Id. at 9–10.

NWFCU, which was owed approximately $1.5 million, had a first priority lien on the debtor's

2

two condominiums, originating from a 2017 agreement. Id. at 10.  MainStreet had a second

priority lien on the condominiums, and was owed about $2.7 million. Id. at 9.

MainStreet's secured claim originated from a $4.1 million loan that it made to Caspian

Auto House Inc. and Babak Bayramov in 2019. [Bankr. Dkt. 46] at 1.  The appellant self-

identified as the "Managing Member" of Caspian Auto House Inc. in a related civil action, Auto.

Fin. Corp. v. Caspian Auto House Inc. et al, No. 1:23-cv-1679 (E.D. Va. 2023), Dkt. 25, at 1,

and was listed as the corporation's Vice President in Virginia's business entity registry. See Va.

State Corp. Comm'n Clerk's Info. Sys., Entity Info., CASPIAN AUTO HOUSE INC.,

https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=159591 (last accessed

Oct. 18, 2024).  MainStreet's loan was guaranteed by the debtor and secured by an indemnity

deed of trust lien on the debtor's two condominiums. [Bankr. Dkt. 46] at 1.

The debtor's schedule of liabilities identified close to $42 million in additional claims:

$31 million due to American Credit Acceptance LLC, about $10.8 million due to Automotive

Finance Corporation, $72,800 due to the Small Business Administration ("SBA") for a COVID-

19-related loan, about $15,000 due to the condominium management company, and about

$13,000 due to the Treasurer of Loudoun County for real estate taxes. [Bankr. Dkt. 25] at 8–14.

On January 10, 2024, the debtor leased Unit 175 of 25350 Pleasant Valley Drive to KBL

Auto Repair, LLC. [Bankr. Dkt. 105] at 2.  The next day, the debtor leased Unit 180 to Auto

Deal Makers LLC. Id.  Both tenant corporations were formed in January 2024. Id.  Each lease

agreement delayed initial rent payments until March 2024, set $10,000 as a monthly rental fee

for a five-year lease term with no increases, and kept the debtor responsible for condominium

fees, real estate taxes, and insurance. [Bankr. Dkt. 155] at 2; [Bankr. Dkt. 157] at 2.  The debtor

did not list the units with a leasing agent or otherwise advertise them for rent before entering into

3

the lease agreements. [Bankr. Dkt. 155] at 3; [Bankr. Dkt. 157] at 3. The debtor also did not

obtain court approval before leasing the property. [Bankr. Dkt. 155] at 3; [Bankr. Dkt. 157] at 3.

On January 17, 2024, Bayramov filed a pro se complaint in the United States District

Court for the Eastern District of Virginia against MainStreet, alleging the bank failed to return a

$400,000 cash collateral deposit he made in association with the $4.1 million loan from

MainStreet to Caspian Auto House Inc. in 2019. Bayramov v. MainStreet Bank, No. 1:24-cv-

00039 (E.D. Va. 2024), Dkt. 1, at 4. Bayramov asserted subject matter jurisdiction was proper

under 28 U.S.C. § 1332 despite identifying both MainStreet and himself as citizens of Virginia.

Id. at 1–2. After MainStreet moved to dismiss for lack of jurisdiction and for failure to state a

claim, id. at Dkt. 4, Bayramov voluntarily dismissed the action with prejudice on February 20,

2024, id. at Dkt. 10.

On January 23, 2024, the debtor moved the bankruptcy court for authorization to use cash

collateral to maintain business operations and pay secured creditor obligations. [Bankr. Dkt. 44].

MainStreet objected because it was not listed as a secured creditor in the debtor's filing. In

response, the debtor amended its motion to offer two $15,000 protection payments to MainStreet.

[Bankr. Dkt. 55]; see also [Bankr. Dkt. 58]. MainStreet again objected, explaining that these

payments would not provide adequate protection given the debtor owed it $45,000 in monthly

loan payments. [Bankr. Dkt. 75] at 2–3. Moreover, MainStreet observed that the debtor only

anticipated receiving $20,000 in monthly rental income from the two units, which was

insufficient to cover even the proposed $15,000 payments given that the debtor also proposed

additional monthly payments to NWFCU and the SBA. Id. at 3.

The March 5, 2024 deadline passed without the debtor filing a reorganization plan. On

April 4, 2024, the debtor moved for an extension until May 21, 2024 to file its reorganization

plan, because it had been unable to secure an accommodation with either NWFCU or MainStreet but hoped to do so by mid-May. [Bankr. Dkt. 79] at 2.

On April 9, 2024, the bankruptcy court held a hearing on the debtor's motion to use cash collateral. [Bankr. Dkt. 95]. At the hearing, the debtor represented that it had offered MainStreet a settlement proposal: the debtor would obtain a refinance loan to pay NWFCU in full and to pay between $800,000 to $900,000 to MainStreet on the condition that MainStreet subordinate its remaining claims to the refinancer's claims. Id. at 2–3. But the debtor also acknowledged that it did not have an offer from a lender, it did not have court approval for such refinancing, and it did not have MainStreet's acceptance of the proposal. Id. at 4.

At the hearing, the Office of the U.S. Trustee observed that the debtor would have less than $4,000 in cash by June, but had at least $24,000 in monthly expenses between tax obligations and nondefault loan payments to NWFCU and MainStreet. Id. at 5–6. Given this lack of cash, the Office of the U.S. Trustee "d[id]n't see a way forward." Id. at 6.

MainStreet concurred with the opinion that the debtor "will run out of money in June." Id. at 6. MainStreet represented that it would reject the debtor's proposed refinancing, as the debtor owed MainStreet around $2.4 million and MainStreet was not prepared to subordinate its claim for a payment of under $900,000. MainStreet further observed that the debtor's reorganization plan was due in early March, but as of the April 9 hearing "[t]here's no plan. And we're not getting adequate protection payments in the amount of the nondefault rate of interest." Id. at 8.

Given these challenges, MainStreet proposed that sale of the debtor's underlying real property was "[t]he only alternative." Id. MainStreet told that bankruptcy court that, to effectuate this sale, the court should "either have the case converted to a [Chapter] 7

[proceeding] or at the very least have the property listed for sale immediately," with MainStreet having approval over the listing price and broker. Id. at 9. The bankruptcy court ordered a ten-minute recess for the debtor's attorney to discuss the proposed sale with Bayramov. Id. at 12.

Upon returning from recess, the debtor represented that it was unable to agree to list the property for sale. Id. at 13. MainStreet then requested that "the case be converted immediately so that we can then go . . . through a Chapter 7 Trustee and be able to sell the property." Id. at 14. The bankruptcy court approved MainStreet's request, stating, "I'm converting this case to a case under Chapter 7 for cause under [11 U.S.C. §] 1112(d)." Id. It reasoned that "the unauthorized use of cash collateral [was] substantially harmful to at least one creditor" and found that there was "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Id. (paraphrasing causes for conversion provided in 11 U.S.C. § 1112(b)(4)). In authorizing the conversion, the court also observed that "[t]here is no place else to go with this case." Id. On April 19, 2024, the bankruptcy court issued an order converting the case from Chapter 11 to Chapter 7. [Bankr. Dkt. 82]. Janet M. Meiburger was appointed as trustee on April 29, 2024. [Bankr. Dkt. 90].

On May 15, 2024, the debtor filed a notice of appeal in the U.S. District Court for the Eastern District of Virginia, challenging the conversion of the case to Chapter 7. 25350 Pleasant Valley LLC v. U.S. Trustee et al., No. 1:24-cv-816 (E.D. Va. 2024), Dkt. 1. Bayramov did not appeal the conversion as a creditor and interested party; instead, he filed a pro se Motion to Intervene as debtor designee, creditor, and interested party on June 12, 2024. Id. at Dkt. 7. The next day, on June 13, 2024, the debtor filed a notice of voluntary dismissal of its appeal. Id. at Dkt. 6. The debtor's attorney sought this dismissal at the request of the Chapter 7 trustee, who later explained her belief that "once a case is converted to Chapter 7 and a Chapter 7

6

trustee is appointed, the trustee assumes responsibility for the debtor's affairs and for any decision that's made with regard to an appeal." [Bankr. Dkt. 203-6] at 2. The district court dismissed the action. 25350 Pleasant Valley LLC, at Dkt. 9.

On June 26, 2024, Bayramov filed a pro se appeal of the dismissal to the Fourth Circuit, claiming the district court erred in dismissing the appeal without addressing his pending Motion to Intervene. The Fourth Circuit affirmed the district court's dismissal in an unpublished per curiam opinion, stating that a court can terminate an action without addressing a nonparty's motion to intervene. In re 25350 Pleasant Valley LLC, No. 24-1580, 2024 WL 3935213, at *1 (4th Cir. Aug. 26, 2024).

While his Fourth Circuit appeal was pending, Bayramov filed the two pro se motions in bankruptcy court that are the subject of his current appeal, seeking to halt the liquidation of the debtor and to reverse the conversion of the proceeding to Chapter 7. Specifically, on June 5, 2024, Bayramov filed a Motion for Preliminary Injunction, which sought to enjoin MainStreet from enforcing its deed of trust, to enjoin the trustee from acting in the matter, and to stay "all activities," including the liquidation process, until the debtor's appeal to the Fourth Circuit was resolved. [Bankr. Dkt. 122] at 6. On June 18, 2024, Bayramov filed a Motion for Reconversion of Case to Chapter 11, contending that the bankruptcy case should be reconverted because the debtor had a viable plan to reorganize, reorganization would be in the best interest of creditors, and the initial conversion violated due process. [Bankr. Dkt. 140] at 2–4, 6.

On June 28, 2024, the Chapter 7 trustee initiated adversary proceedings against the debtor's two condominium unit tenants, Auto Deal Makers and KBL Auto Repair, seeking to terminate their leases and recoup unpaid rent. [Bankr. Dkt. 155] at 3; [Bankr. Dkt. 157] at 3. The trustee contended that the leases were not made in the ordinary course of business, did not

contain arm's length terms, and were not commercially reasonable. [Bankr. Dkt. 155] at 3; [Bankr. Dkt. 157] at 3. She also asserted that the leases could be terminated because the debtor did not obtain court approval for the leases and because both tenants had not made rent payments in May or June 2024. [Bankr. Dkt. 155] at 3–4; [Bankr. Dkt. 157] at 3–4.

The bankruptcy court held a hearing on Bayramov's Motions for Reconversion and Preliminary Injunction on July 2, 2024. [Bankr. Dkt. 203-6] at 1. After hearing from Bayramov and MainStreet, the court denied the Motion for Reconversion, finding that Bayramov could not make pro se filings as the debtor designee on behalf of the debtor after the case had been converted to Chapter 7. The court further found that Bayramov "did not meaningfully address the cash collateral issue" that served as the basis for the initial conversion, and that Bayramov's claim that he would "run the business more profitably" was "an argument that he has made numerous times before" but had yet to assert "facts to support his baseless request" to regain control of the business. Id. at 4.

The bankruptcy court also denied Bayramov's Motion for Preliminary Injunction after hearing from Bayramov, the Chapter 7 trustee, and MainStreet. In doing so, the court walked through the four-factor test for preliminary injunctions set out in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008). The court found that "Bayramov has not shown a likelihood of success on the merits that MainStreet does not hold a valid secured claim," particularly given that "the debtor's own schedules . . . indicate that MainStreet has a secured claim" and did not "even list [that] claim as disputed." [Bankr. Dkt. 203-6] at 5. The court also found that Bayramov failed to demonstrate a likelihood of success on his appeal to the Fourth Circuit, and thus his requests to enjoin the trustee and to stay the proceedings lacked merit. Id. at

5–6.[2]  The bankruptcy court reasoned that, if Bayramov "wanted to control the appeal of the

conversion order," he should have "filed an appeal in his capacity as a creditor rather than to try

to hijack the debtor's appeal." Id. at 6.  In addition to observing this procedural error, the court

found a lack of likelihood of success in reversing the Chapter 7 conversion on appeal because

"the debtor was using cash collateral without authorization and . . . without adequate protection

and consent." Id.  Finally, the court found that none of the other three Winter factors supported

granting the injunction: Bayramov did not demonstrate how he would suffer irreparable harm,

the balance of equities did not support the injunction because Bayramov had not shown how the

case remaining under Chapter 11 would be in the best interest of creditors, and the public interest

would be better served by requiring debtors and their designees to comply with the Bankruptcy

Code's requirement to obtain authorization before using secured creditors' cash collateral. Id.

        The bankruptcy court issued orders denying the Motion for Reconversion and Motion for

Preliminary Injunction on July 12, 2024.  [Bankr. Dkt. 170], [Bankr. Dkt. 171].  On July 22,

2024, Bayramov timely appealed those orders to this Court under 28 U.S.C. § 158.  [Dkt. 1] at 2.

## II. DISCUSSION

### A. Standard of Review

        Upon appeal, a "bankruptcy court's findings of fact are reviewed under the clearly

erroneous standard . . . [and] its conclusions of law are reviewed de novo." In re Bryson

Properties, XVIII, 961 F. 2d 496, 499 (4th Cir. 1992).

---

[2] That finding was corroborated by the Fourth Circuit when it affirmed the district court's order
on August 26, 2024.

B. <u>Analysis</u>

Although Bayramov raises 18 issues on appeal, [Dkt. 2] at 35–36, they fit into three categories of alleged errors by the bankruptcy court: (1) converting the action to Chapter 7 with insufficient cause and inadequate due process, (2) not reconverting the action to Chapter 11, and (3) not granting the preliminary injunctions he requested.

As an initial matter, Bayramov cannot use this appeal to challenge the conversion of the bankruptcy action from Chapter 11 to Chapter 7. Bankruptcy court orders converting a Chapter 11 action to Chapter 7 are immediately appealable. <u>See</u> <u>In re Fraidin</u>, 110 F.3d 59, 1997 WL 153826, at *1 (4th Cir. 1997) (per curiam); <u>In re Vista Foods U.S.A., Inc.</u>, 202 B.R. 499, 500 (B.A.P. 10th Cir. 1996). The time for Bayramov to have appealed the Chapter 7 conversion was within 14 days of the bankruptcy court's April 19, 2024 conversion order. <u>See</u> Fed. R. Bankr. P. 8002; [Bankr. Dkt. 82]. As a party in interest in the Chapter 7 conversion due to being an equity security holder and a creditor, Bayramov could have filed his own notice of appeal and established that he was a "person aggrieved" who had standing to appeal the conversion. <u>Trantham v. Tate</u>, 112 F.4th 223, 233 (4th Cir. 2024); <u>see also</u> Fed. R. Bankr. P. 8002(a)(3) (permitting appeals by multiple parties). But he did not do so. Bayramov therefore cannot challenge the initial conversion in this appeal.

Bayramov claims that because his earlier attempt to challenge the initial conversion was unfairly rebuffed, he should be able to challenge it now as a matter of equity. Specifically, he accuses the Chapter 7 trustee of improperly influencing the debtor's counsel to dismiss the debtor's appeal of the conversion. But, despite Bayramov's claims, the trustee acted wholly appropriately. She gained control of the debtor upon her appointment, and it was within her power to move for dismissal of its appeal. Bayramov, meanwhile, had no authority to order the debtor to continue the appeal. As the Tenth Circuit has held, "[t]he Debtor's former

10

management . . . lacked authority to seek review of the conversion order on the Debtor's behalf"
but "may still appeal a bankruptcy court order in their own right . . . as persons aggrieved" if they
"have been injured pecuniarily." In re Bear Creek Trail, LLC, 35 F.4th 1277, 1281 (10th Cir.
2022) (internal citations omitted). Recognizing that the trustee, and not the debtor's former
management, has control over the debtor's legal actions post-conversion is consistent with the
Supreme Court's observation that, "when a trustee is appointed, [s]he assumes control of the
business, and the debtor's directors are 'completely ousted.'" Commodity Futures Trading
Comm'n v. Weintraub, 471 U.S. 343, 352–53 (1985) (quoting H.R. Rep. No. 95–595, pp. 220–
21). Therefore, Bayramov's attempt at this point to have this Court review the conversion to
Chapter 7 is without merit; however, Bayramov did timely appeal the two bankruptcy court
orders that he listed in his Notice of Appeal: the Order Denying the Motion for Reconversion of
Case to Chapter 11, [Bankr. Dkt. 170], and the Order Denying Motion for Preliminary Injunction
on July 12, [Bankr. Dkt. 171]. The Court addresses each in turn.

In challenging the order denying reconversion, Bayramov contends the bankruptcy court
should have reconverted the proceeding to Chapter 11 because the initial conversion lacked due
process, ignored the potential for reorganization to benefit creditors, and negatively impacted the
estate's value by disrupting ongoing business relationships. None of these claims is persuasive.

Chapter 11 of the Bankruptcy Code provides the legal standard for evaluating
Bayramov's claims. The bankruptcy court, "on request of a party in interest, and after notice and
a hearing, . . . shall convert a case under [chapter 11] to a case under chapter 7 . . . for cause." 11
U.S.C. § 1112(b)(1). The phrase "after notice and a hearing . . . means after such notice as is
appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate
in the particular circumstances." Id. § 102(1). A conversion is "for cause" if it occurs after

11

"substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," "unauthorized use of cash collateral substantially harmful to 1 or more creditors," or "failure . . . to file or confirm a plan, within the time fixed by this title or by order of the court," among other reasons.  Id. § 1112(b)(4).

The notice and hearing provided to the debtor and other interested parties were appropriate under the circumstances.  As Bayramov has admitted, "[a] hearing was held on April 9, 2024, regarding the conversion of the case from Chapter 11 to Chapter 7."  [Bankruptcy Dkt. 139] at 1.  At the hearing, the bankruptcy court was reviewing the debtor's motion to use cash collateral.  MainStreet, which had objected to the motion, requested the motion be denied and that the case be converted to Chapter 7.  The following facts were known to the bankruptcy court when MainStreet's request to convert was made:

- The debtor had identified over $4 million in secured claims and over $40 million in unsecured claims on its schedule of liabilities.  [Bankr. Dkt. 25] at 8–14.  It had identified under $4 million in assets in the same filing.  Id. at 7.

- As of April 9, 2024, the debtor had not filed a Chapter 11 plan of reorganization, despite having been notified by the bankruptcy court that one was due on March 5, 2024.  [Bankr. Dkt. 16] at 1; [Bankr. Dkt. 95] at 8.

- The debtor suggested at the hearing that it wanted to refinance, but did not have an offer from a lender, secured creditor consent, or court approval.  [Bankr. Dkt. 95] at 4.

- The Office of the U.S. Trustee and MainStreet both agreed the debtor would run out of cash in June and did not see a way forward under Chapter 11.  Id. at 6.

- The debtor refused to accept MainStreet's proposal to list the underlying real estate for sale.  Id. at 13.

- The debtor had been using cash collateral without court authorization, in violation of Chapter 11.  Id. at 9, 14.

These facts make clear that it was "appropriate in the particular circumstances" for the bankruptcy court to convert the case at the end of the hearing, thereby giving the debtor a chance to liquidate its real assets before it ran out of cash.  The debtor was on notice of the Chapter 7

conversion as soon as MainStreet requested it, and the court recessed so that the debtor's attorney and Bayramov, who was present for the hearing, could confer on a way forward. Id. at 9–14.

That the debtor's attorney did not object at the hearing to the conversion does not mean the debtor lacked an opportunity to be heard. Rather, as the facts reveal, any objection by the debtor's counsel would have been futile given the overwhelming evidence that the conversion was for cause and in the best interests of the creditors. As the bankruptcy court stated when it converted the case, the debtor had engaged in "the unauthorized use of cash collateral substantially harmful to at least one creditor," and there was "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Id. at 14 (paraphrasing 11 U.S.C. § 1112(b)(4)). Moreover, the debtor had "fail[ed] . . . to file or confirm a plan, within the time fixed by this title or by order of the court." 11 U.S.C. § 1112(b)(4)(J). Given these circumstances, the bankruptcy court provided sufficient due process and acted well within its discretion in converting the case.

Bayramov's claim that the bankruptcy court ignored the potential benefits of reorganization in denying his motion for reconversion is without merit. It was undisputed that the debtor was quickly running out of cash, and Bayramov did not offer any evidence that he had a concrete plan for reorganization. The refinancing proposal, for which he had not obtained either financing or court approval, was opposed by MainStreet—the secured creditor it was supposed to benefit. See [Bankr. Dkt. 95] at 4. As the bankruptcy court found, Bayramov's claim that he could reorganize the debtor successfully was one he had made "numerous times before" yet had "assert[ed] no facts to support." [Dkt. No. 9] at 16. The bankruptcy court was therefore acting well within its discretion when it denied Bayramov's reconversion motion.

Finally, Bayramov claims his motion for reconversion should have been granted because the conversion to Chapter 7 had disrupted the debtor's ongoing business relationships, thereby decreasing its value. Far from doing so, conversion appears to have benefited the debtor by permitting the trustee to challenge the validity of the debtor's leases, which Bayramov had authorized under questionable circumstances and without the bankruptcy court's consent. See [Bankr. Dkt. 155] at 3; [Bankr. Dkt. 157] at 3 (assertion by Chapter 7 trustee that the January 2024 leases of the condominium units "[we]re not arm's length terms and [we]re not commercially reasonable" given they were formed with corporations founded that same month, did not involve listing the units on the rental market, delayed the initial monthly rent payments for two months, and included no rent increases over a five-year lease term). In sum, the bankruptcy court properly denied Bayramov's motion for reconversion.

Bayramov's challenge to the bankruptcy court's denial of his motion for preliminary injunction also fails. This motion centers around two requests: halting the trustee's liquidation process until reconversion to Chapter 7, and halting the creditor payout process until Bayramov can show that MainStreet's secured creditor claim is faulty. On neither claim has he made the first showing required of a party seeking a preliminary injunction: "that he is likely to succeed on the merits." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

The bankruptcy court correctly concluded that there was very little likelihood that Bayramov would succeed in reconverting the case to Chapter 11. As detailed above, the case was properly converted to Chapter 7. Bayramov failed to appeal the conversion as a party in interest, the debtor voluntarily dismissed its own appeal of the conversion, and Bayramov's attempt to intervene and reverse that dismissal was denied by the Fourth Circuit. In re 25350 Pleasant Valley LLC, No. 24-1580, 2024 WL 3935213, at *1 (4th Cir. Aug. 26, 2024).

Moreover, in his appeal to this Court, Bayramov has not offered any new arguments on this issue, nor has he pointed to anything in the record that shows a likelihood of success on the merits. Bayramov therefore cannot show he is likely to have the case reconverted.

Nor can Bayramov show he is likely to succeed on his claim that MainStreet's loan was only collateralized by half of the debtor's real assets. While the debtor was managed by Bayramov, it told the bankruptcy court that MainStreet was an undisputed creditor with its claim collateralized by the two condominium units, which the debtor estimated to be valued at $3.4 million. [Bankr. Dkt. 25] at 5, 9; see also [Bankr. Dkt. 95] at 13 (bankruptcy court's stating that "the debtor's own schedules and the assertions of [its] counsel . . . indicate that MainStreet has a secured claim. The schedules don't even list MainStreet's secured claim as disputed."). Moreover, Bayramov's contention that MainStreet's loan was only secured by half of the underlying real assets is directly contradicted by the text of the deed of trust that Bayramov signed in 2019. [Bankr. Dkt. 203-3] at 2, 34–35.

Because Bayramov has not shown that his challenges to the conversion and to MainStreet's creditor claims are likely to succeed, the bankruptcy court did not err in denying his motion for preliminary injunction.

### III. CONCLUSION

For the foregoing reasons, the orders of the bankruptcy court denying the Motion for Reconversion [Bankr. Dkt. 170] and denying the Motion for Preliminary Injunction [Bankr. Dkt. 171] will be affirmed by an Order to be issued with this Memorandum Opinion.

/s/ 

Leonie M. Brinkema
United States District Judge

15